UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOSEPHINE CARONIA,

               Plaintiff,

  -against-

HUSTEDT CHEVROLET, HUSTEDT CHEVROLET,
INC., HUSTEDT CHEVROLET WEST, HUSTEDT
CHEVROLET WEST INC., HUSTEDT HYUNDAI,
HUSTEDT HYUNDAI, INC., and CHARLES CHALOM,
individually and in his capacities as owner and/or agent of
Hustedt Chevrolet, Hustedt Chevrolet, Inc., Hustedt Chevrolet
West, Hustedt Chevrolet West, Inc.,Hustedt Hyundai,
and Hustedt Hyundai, Inc., THOMAS JONES, JONES &
LITTLE, CPA'S, P.C. and JOHN DOES 1-20

               Defendants.
-----------------------------------------------------------------------X
KEVIN PRATT,

               Plaintiff,

  -against-

HUSTEDT CHEVROLET, HUSTEDT CHEVROLET,
INC., HUSTEDT HYUNDAI, HUSTEDT HYUNDAI,
INC., and CHARLES CHALOM, individually
and in his capacities as owner and/or agent of
Hustedt Chevrolet, Hustedt Chevrolet, Inc.,
Hustedt Hyundai, and Hustedt Hyundai, Inc.,
and JOHN DOES 1-20

               Defendants.
-----------------------------------------------------------------------X
FRANK VENTIMIGLIA,

               Plaintiff,

  -against-

HUSTEDT CHEVROLET, HUSTEDT CHEVROLET,
INC., HUSTEDT HYUNDAI, HUSTEDT HYUNDAI,

**MEMORANDUM & ORDER**

Civil Action No. 05-3526
(DRH) (MLO)

Civil Action No. 05-4148
(DRH) (MLO)

Civil Action No. 05-4149
(DRH) (MLO)

INC., and CHARLES CHALOM, individually
and in his capacities as owner and/or agent of
Hustedt Chevrolet, Hustedt Chevrolet, Inc.,
Hustedt Hyundai, and Hustedt Hyundai, Inc.,
and JOHN DOES 1-20

       Defendants.
-----------------------------------------------------------------------X
PAUL WEISS,

       Plaintiff,

 -against-

HUSTEDT CHEVROLET, HUSTEDT CHEVROLET,    Civil Action No. 05-4230
INC., HUSTEDT HYUNDAI,  HUSTEDT HYUNDAI,      (DRH) (MLO)
INC., and CHARLES CHALOM, individually
and in his capacities as owner and/or agent of
Hustedt Chevrolet, Hustedt Chevrolet, Inc.,
Hustedt Hyundai, and Hustedt Hyundai, Inc.,
and JOHN DOES 1-20

       Defendants.
-----------------------------------------------------------------------X

**APPEARANCES:**

**Steinberg, Fineo, Berger & Fischoff, P.C.**
Attorneys for Plaintiffs
401 Broadhollow Road, 4th Floor
Melville, New York 11746
By: Sharon D. Simon, Esq.

**Milman Labuda Law Group, PLLC**
Attorneys for Defendants
3000 Marcus Avenue, Suite 3003
Lake Success, New York 11042
By: Perry S.  Heidecker, Esq.
   Michael J. Mauro, Esq.

**HURLEY, Senior District Judge:**

In each of the above-captioned actions, a former employee of Defendants Hustedt Chevrolet, Hustedt Chevrolet Inc. ("Chevrolet Inc."), Hustedt Chevrolet West Inc. ("West Inc.") and/or Hustedt Hyundai, Inc. ("Hyundai Inc.") (collectively "Dealership Defendants") is seeking redress for the alleged discriminatory and retaliatory practices of Defendant Charles Chalom ("Chalom"),[1] owner of Dealership Defendants, and hostile work environment created by him. Presently before the Court are motions by each of the plaintiffs, Josephine Caronia ("Caronia"), Kevin Pratt ("Pratt"), Frank Ventimiglia ("Ventimiglia") and Paul Weiss ("Weiss") (collectively "Plaintiffs"), to consolidate these actions for purposes of trial. For the reasons set forth below, the motions are granted.

**Background**

In order to place the current motion to consolidate in context, a brief description of the four actions and their factual underpinnings is in order. These descriptions are taken from the Court's Memoranda and Orders on the motions for summary judgment made in each of the respective actions.[2]

Dealership Defendants are engaged in the sale and lease of cars and trucks. Chalom owns 100% of the stock of Chevrolet Inc. and Hyundai Inc. He has the final decision-making authority for the Dealership Defendants and supervised their employees, including Caronia, Pratt,

---

[1] Dealership Defendants and Chalom shall be collectively referred to as Defendants.

[2] *See Caronia v. Hustedt Chevrolet*, Memorandum and Order, dated March 31, 2009; *Ventimiglia v. Hustedt Chevrolet*, Memorandum and Order, dated March 25, 2009; *Pratt v. Hustedt Chevrolet*, Memorandum and Order, dated March 27, 2009; *Weiss v. Hustedt Chevrolet*, Memorandum and Order, dated July 13, 2009.

Ventimiglia, and Weiss.

**I.    Caronia**

Caronia worked at Dealership Defendants at least since 1995 and remained employed until February 8, 2005. She held the position of office manager/controller.

Caronia and Chalom had a personal relationship that ended in or about the year 2000. Chalom paid her home mortgage and apartment rental fee from 1995 through January 2005. According to Caronia, from the day she told Chalom that their relationship was over until the day she left her job, Chalom sexually harassed her. She claims that the course of conduct includes the following: "Chalom would call [Caronia] into his office and would say that she was ruining his sex life. Chalom would say she was holding his dick hostage. Chalom would call Caronia cold and a bitch. If Caronia walked out of the office he would say get out and stay out to her. If she was standing at one of the desks, he would rub up against her. Chalom would say to Caronia in front of the office staff that she was provoking him with her tits and her ass and that his anger was her fault. This continued almost every day for five years." (Caronia's Resp. to Def.s' 56.1 Statement at ¶ 61 (citing Caronia Dep. at 70-71.) Caronia also asserts that there were constant incidents of Chalom rubbing her and touching her, and the more she objected the more he kept doing these things.

In her complaint, Caronia asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the New York Executive Law § 296 for sexual harassment, hostile work environment, disability discrimination, age discrimination, and retaliation. She also asserted common law causes of action. As a result of Defendants' motion for summary judgment, what remains for trial are her federal and state law claims for sexual

harassment and hostile work environment and her claims for assault and battery occurring on or after July 27, 2004.

**II.     Ventimiglia**

Ventimiglia was employed by Chevrolet Inc. as the general sales manager from approximately May 2004 to October 4, 2004.  In his complaint, Ventimiglia asserted the following claims under Title VII and the New York Executive Law § 296: (1) hostile work environment based on his national origin, Italian; (2) hostile work environment based sex; (3) hostile work environment based on race; and (4) retaliation for opposing Chalom's sexual harassment of Caronia.  In addition, Ventimiglia asserts common law tort claims, including one for defamation.  As a result of Defendants' motion for summary judgment, the claims for defamation claim and hostile work environment claim based on race were dismissed.  What remain are the claims for hostile work environment based on national origin and sex and the retaliation claim.

Ventimiglia's claim for hostile work environment based on sex may be summarized as follows.  Chalom was obsessed with Caronia and continually demanded she engage in a relationship with him.  Caronia refused these requests and when she did so, Chalom did not react well.  For example, he accused her of having sex with other men at the dealership including Ventimiglia. He would accuse and interrogate Ventimiglia about having a sexual relationship with Caronia.  Despite Ventimiglia's denials, Chalom's accusations did not stop.  Rather, Ventimiglia was placed in the middle of Chalom's harassment of Caronia by Chalom's constantly accusing Ventimiglia of having an affair with her and forcing him to defend himself against these accusations.  Ventimiglia also witnessed Chalom calling Caronia offensive names

like whore, making lecherous remarks about her body, and actually grabbing her and touching various areas of her body while she struggled to get free. According to Ventimiglia, Chalom's remarks were not limited to Caronia; he made lecherous and inappropriate remarks about other female employees, as well as Plaintiff's wife and women who came into the dealership.

In support of his retaliation claim, Ventimiglia avers that he told Chalom that his remarks, accusations and behaviors were offensive. He maintains that in 2004 he spoke to Chalom about his treatment of Caronia more than a dozen times and that his position was taken away as a result of his constantly imploring Chalom to stop harassing Caronia.

### III. Pratt

Pratt, an African American male, was employed by Chevrolet Inc. and Hyundai Inc. as a car salesperson from approximately June 2004 to May 2005 when he was terminated. In his complaint he asserted the following claims under Title VII, as well as 42 U.S.C. § 1981 and the New York Executive Law § 296: (1) termination of his employment as a result of race discrimination; (2) a hostile work environment based on his race; (2) hostile work environment based sex; and (3) retaliation for opposing Chalom's discriminatory practices and harassment against himself and his co-worker Josephine Caronia.. As a result of Defendants' motion for summary judgment, his claim for hostile work environment based on sex was dismissed.

Pratt's surviving hostile work environment is based upon racial comments and racial slurs, including the term nigger, directed at him by Chalom, as well as Chalom's failure to address Pratt's complaints of racial slurs and comments made by other employee. Pratt also asserts that he was witness to Chalom's alleged sexual harassment of Caronia. Pratt maintains that his firing was in retaliation for his protests against Chalom's treatment of Caronia and

Ventimiglia, and the racial slurs directed at him..

IV.     **Weiss**

Weiss was employed by Chevrolet Inc. as finance manager from 1992 to 1994 and as finance director for the period 1997 until October 2004, at which time he claims he was constructively discharged. Although he asserted numerous claims in his complaint , what remains after summary judgment are his claims under Title VII and the New York Executive Law for hostile work environment based on gender and for retaliation.

Weiss's claim for hostile work environment based on sex, like that of Ventimiglia is based on, among other things, Chalom's interrogation and harassment of him regarding his, Weiss's, relationship with Caronia.  Weiss's retaliation claim is based on his alleged complaints to Chalom regarding Chalom's harassment of Caronia.  More particularly, in the last year of his employment Weiss complained to Chalom about his sexual harassment of Caronia at least ten to fifteen times.  Weiss maintains that Chalom retaliated against him by cheating him out of his commissions.  Weiss also claims that Chalom retaliated against him when Chalom decided to transfer Weiss to Hyundai because Chalom felt Weiss was getting too close to Caronia.  The transfer would have resulted in a reduction in Weiss's income because Hyundai was not as busy and Weiss would have seen fewer customers.  Weiss left Chevrolet Inc.'s employ before the transfer occurred.

**Discussion**

I.     **Standard for Consolidation**

Rule 42 empowers a trial judge to consolidate actions for trial when there are common issues of law or fact to avoid unnecessary costs or delay.  Specifically, the Rule provides:

7

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a). District courts have "broad discretion to determine whether consolidation is appropriate," and they "have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990). "However, the discretion to consolidate is not unfettered." *Id.* at 1285. "Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Id.* "So long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate." *Toussie v. County of Suffolk*, 2007 WL 1490463, at *1 (E.D.N.Y. May 21, 2007) (internal quotations omitted). "In that regard, the Second Circuit has noted that 'the risks of prejudice and confusion may be reduced by the use of cautionary instructions to the jury and verdict sheets outlining the claims of each plaintiff.'" *Franco v. Ideal Mortgage Bankers, Ltd.*, 2009 WL 3150320 (E.D.N.Y. Sept. 28, 2009) (quoting *Johnson*, 899 F.2d at 1285.)

In deciding whether to exercise its discretion to consolidate, a district court must consider "whether the specific risks of prejudice and possible confusion are overborne by risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to consolidate multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Johnson*, 899 F.2d at 1285.

## II. Consolidation of these Actions is Warranted

Preliminarily, the Court makes the following observations. First, the discrimination and

retaliation claims asserted in each of these four actions are all premised upon allegations against a single individual, Defendant Chalom, the owner of the Corporate Defendants and the supervisor of each of the Plaintiffs. Moreover, the alleged actions and statements of Chalom which form the bases of each plaintiff's claims all occurred in the same general time frame.

In discrimination actions based on a hostile work environment, "[b]ecause the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who [him]self experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support [his] claim." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "Nor must offensive remarks or behavior be directed at individuals who are members of the plaintiff's own protected class. Remarks targeting members of other minorities, for example, may contribute to the overall hostility of the working environment for a minority employee." *Id.* Given the identity of time and actor between the discrimination claims of each plaintiff, it would appear that testimony concerning the nature of the workplace environment as a whole will necessarily involve the same witnesses and many of the same incidents in each of these four cases.

Against this backdrop, the Court finds that Plaintiffs have sustained their burden of demonstrating common issues of law and fact. For example, Ventimiglia and Weiss both have claims of sexual discrimination. It is alleged that Chalom was obsessed with Caronia and continually demanded she engage in a relationship with him; when she refused, Chalom accused her of having sex with other men at the dealership including Ventimiglia and Weiss and would interrogate Weiss and Ventimiglia about having a sexual relationship with Caronia placing them in the middle of Chalom's harassment of Caronia. Moreover, Pratt's retaliation claim is

interrelated in that he maintains he was fired because, inter alia, Chalom did not like the idea that Pratt had protested his accusations against Caronia and Ventimiglia by his refusal to sign an affidavit stating the two were having an affair. In addition, Ventimiglia, Weiss and Pratt all have retaliation claims based upon their claimed opposition to Chalom's alleged sexual harassment of Caronia. Finally, there is substantial overlap in the legal issues presented in these actions, for example, the retaliation claims made by each of the Plaintiffs, and the hostile work environment claims based on sex asserted by Ventimiglia and Weiss.

Consideration of the burden on the parties, witnesses and available resources in the event these cases were to be tried separately favors consolidation. Based upon the records submitted in each of these actions in connection with the motions for summary judgment and as noted above, it is apparent to the Court that there will be substantial overlap in testimony and consolidation is the most efficient course. Allowing these actions to proceed separately will result in duplicative efforts, wasting both the Court's time and the parties' time and money. Concededly, there are differences in the causes of action. But such differences "do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law and the differences do not outweigh the interests of judicial economy served by consolidation." *In re Bank of America Corp. Securities, Derivative and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)). Here, the differences do not outweigh the interest of judicial economy served by consolidation.

Finally, the Court finds that Defendants' concerns regarding prejudice and juror confusion can be adequately addressed through the use of cautionary instructions to the jury and carefully crafted verdict sheets.

## Conclusion

The motion of the Plaintiffs to consolidate these four actions for trial is granted.

**SO ORDERED.**

Dated: Central Islip, New York
December 29, 2009

/s/
Denis R. Hurley
Senior District Judge